UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| AMERICAN FAMILY CONNECT PROPERTY AND CASUALTY INSURANCE COMPANY F/K/A IDS PROPERTY CASUALTY INSURANCE COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>ELIZABETH HUEBNER, an individual,<br><br>Defendant. | Case No. C20-1328RSL<br><br>ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT |

This matter comes before the Court on plaintiff's motion for summary judgment. Dkt. # 8. The Court has considered the memoranda, declarations, and exhibits submitted by the parties. For the following reasons, plaintiff's motion for summary judgment is granted.

**I.     BACKGROUND**

Plaintiff American Family Connect Property and Casualty Insurance Company ("Connect") is an insurance company. Defendant Elizabeth Huebner ("Huebner") is the insured. On March 1, 2014, Connect and Huebner entered into an automobile insurance policy (no. AI01378482) with coverage from March 1, 2014 through September 1, 2014. Dkt. # 8 at 2. Huebner's 1997 Toyota Corolla was the only subject vehicle on the policy. Dkt. # 1 ¶ 3.2. The policy provided Underinsured Motorist (UIM) Benefits for bodily injury with a policy limit of $250,000 per person. Dkt. # 8 at 2; Dkt. # 11 at 2.

ORDER GRANTING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT - 1

On March 5, 2014, Huebner was driving her car for work when she was in an automobile collision. Dkt. # 8 at 2; Dkt. # 11 at 2. Because Huebner was driving for work at the time of the accident, her initial claim proceeded administratively before the Washington State Department of Labor and Industries. Dkt. # 9-2 at 1. The other driver did not contest liability in the collision and his insurance company tendered its policy limits of $250,000 in liability coverage. Dkt. # 11 at 2. Huebner accepted the settlement amount. Dkt. # 13 at 2; Dkt # 16 at 1. Connect agrees there is coverage for the March 5, 2014 accident under the policy. Dkt. # 1 ¶ 4.3. The policy contains the following relevant provision regarding the disputed offset:

> **Part III – Underinsured Motorist Coverage**
> **Limits of Liability**
> Amounts otherwise payable for damages which the insured person is legally entitled to recover from the owner or operator of an underinsured motor vehicle because of bodily injury or property damaged caused by an accident, shall be reduced by all sums paid because of the bodily injury or property damage by or on behalf of the persons or organizations which may be legally liable. This includes all sums paid under Part I – Liability of the policy.

Dkt. # 9-3 at 18.

The settlement payment from the other driver was placed into Huebner's attorney's trust account and distributed pursuant to statute. Dkt. # 13 at 2, 4; RCW 51.24.060. Of the $250,000 gross recovery, $83,625.00 was allocated to attorney's fees and costs, Huebner received 25% amounting to $41,593.75, and the balance of the award was reimbursed to the Department of Labor and Industries ($311.95) and Huebner's self-insured employer ($124,469.05). Dkt # 13 at 4; RCW 51.24.060(1)(b)–(c).

On September 4, 2020, Connect instituted this action against Huebner seeking to offset the amount that Huebner recovered from the at-fault party against the UIM policy. Dkt. # 1 at 3. Connect argues it is legally entitled to an offset of $250,000 for the settlement that Huebner made with the other driver as a third-party tortfeasor. Dkt. # 16 at 1. Before addressing the merits of Connect's motion for summary judgment, the Court will first evaluate Connect's requests to strike material.

ORDER GRANTING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT - 2

## II. REQUEST TO STRIKE HUEBNER'S DECLARATION

Connect requests that the Court strike Huebner's declaration, arguing that it provides no relevant information when the parties do not dispute the fact that Huebner sustained injuries as a result of the automobile accident. Dkt. # 16 at 6. Connect fails to cite to authority to support its request to strike Huebner's declaration.

Connect's relevance objection is not a sufficient reason to strike the declaration. See Bach v. Forever Living Prod. U.S., Inc., 473 F. Supp. 2d 1127, 1131 (W.D. Wash. 2007) ("[I]t is normally 'inappropriate . . . to strike materials submitted in support of or in opposition to a motion for summary judgment on the grounds of relevance.'" (citing Powers v. Runyon, 974 F. Supp. 693, 697 (S.D. Ind.1997))). Although Huebner's declaration does not assist the Court in evaluating the pending motion for summary judgment, that alone does not provide a basis for striking the declaration. See Stepp v. Takeuchi Mfg. Co. (U.S.) Ltd., No. C07-5446RJB, 2008 WL 4460268, at *4 (W.D. Wash. Oct. 2, 2008) (declining to strike the declaration and supplemental report of a proffered expert on the basis of relevance at summary judgment).

## III. PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

### A. Legal Standard for Summary Judgment

Summary judgment is appropriate when, viewing the evidence in the light most favorable to the nonmoving party, "there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party "bears the initial responsibility of informing the district court of the basis for its motion." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Where the nonmoving party will bear the burden of proof at trial, the moving party need not "produce evidence showing the absence of a genuine issue of material fact," but instead may discharge its burden under Rule 56 by "pointing out . . . that there is an absence of evidence to support the nonmoving party's case." Id. at 325.

Once the moving party has satisfied its burden, it is entitled to summary judgment if the non-moving party fails to designate "specific facts showing that there is a genuine issue for trial." Id. at 324. "The mere existence of a scintilla of evidence in support of the non-moving

1   party's position is not sufficient." Arpin v. Santa Clara Valley Transp. Agency, 261 F.3d 912,
2   919 (9th Cir. 2001) (internal citation omitted). "An issue is 'genuine' only if there is a sufficient
3   evidentiary basis on which a reasonable fact finder could find for the nonmoving party." In re
4   Barboza, 545 F.3d 702, 707 (9th Cir. 2008) (internal citation omitted).
5       Because there is no genuine dispute as to any material fact related to Connect's claim, the
6   Court considers whether Connect is entitled to judgment as a matter of law.

**B.     Uninsured Motorist Offset**

Connect argues that it is legally entitled to credit the tortfeasor's $250,000 settlement payment against the UIM policy limits. Dkt. # 8 at 1–2. Washington's underinsured motorist statute provides in relevant part:

> In the event of payment to an insured under the coverage required by this chapter and subject to the terms and conditions of such coverage, the insurer making such payment shall, to the extent thereof, be entitled to the proceeds of any settlement or judgment resulting from the exercise of any rights of recovery of such insured against any person or organization legally responsible for the bodily injury, death, or property damage for which such payment is made[.]

RCW 48.22.040(3). The plain language of Washington's underinsured motorist statute supports Connect's position that a UIM carrier is permitted to offset the amount of an underinsured tortfeasor's settlement payment against the insured's UIM policy limits.

A purpose of the UIM statute is to provide a secondary layer of coverage, or a safety net, that floats on top of liability coverage. See Bohme v. PEMCO Mut. Ins. Co., 127 Wn.2d 409, 414-15 (1995); RCW 48.22.030. Washington's UIM statute allows the injured party to recover the damages that the injured party would have received had the tortfeasor maintained liability insurance as broad as the injured party's UIM limits. Hamilton v. Farmers Ins. Co. of Wash., 107 Wn.2d 721, 732 (1987); RCW 48.22.030.

There is ample Washington caselaw to support the principle that a UIM carrier is permitted to offset the full amount of the underinsured tortfeasor's liability coverage against the insured's damages. See DeVany v. Farmers Ins. Co., 134 Wn. App. 204, 208 (2006); Hamm v.

ORDER GRANTING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT - 4

1  State Farm Mut. Auto. Ins. Co., 151 Wn.2d 303, 308 (2004). UIM carriers are likewise entitled
2  to set off the amount of any tortfeasor recovery from the amounts owed to an insured under a
3  UIM policy. Hamm, 151 Wn.2d at 308. In the present case, Connect is therefore entitled to
4  offset the full amount of the tortfeasor's settlement payment, which was equal to his liability
5  coverage, against Huebner's damages.
6       Huebner cites to Thiringer to support her position that she has not been made whole. Dkt.
7  # 11 at 13; Thiringer v. Am. Motors Ins. Co., 91 Wn.2d 215, 219-20 (1978). However, Thiringer
8  involved a personal injury protection coverage subrogation claim, which is irrelevant to the UIM
9  offset claim at issue here.
10      A fundamental policy underlying UIM insurance is that "liability insurance is primary,
11 while UIM insurance is secondary." Allstate Ins. Co. v. Dejbod, 63 Wn. App. 278, 284 (1991).
12 "The intent is that UIM insurance supplement but not supplant liability insurance." Dejbod, 63
13 Wn. App. at 284. "A UIM insurer can subtract a liability policy pursuant to RCW 48.22.030(1)
14 if the person insured by the liability policy is liable to the injured claimant and there is no other
15 reason why the injured claimant could not legally recover from the liability carrier." Id. at 285.
16      Here, Huebner diligently pursued her claim with the other driver's liability carrier and
17 received a settlement payment at the liability policy limit of the tortfeasor. By arguing that her
18 UIM coverage should remain unaffected by the tortfeasor's settlement payment, Huebner
19 contravenes the intended primary/secondary relationship between carriers. See id. It would be
20 improper to receive the benefits of secondary UIM coverage on top of the primary coverage she
21 has already received.
22      **1.    Tortfeasor's Settlement Payment is not a Workers' Compensation Benefit**
23      Huebner argues that a UIM insurer cannot claim an offset for workers' compensation
24 benefits received by its insured. Dkt. # 11 at 6. The basis of Huebner's argument is that a portion
25 of the $250,000 settlement payment paid by the tortfeasor was taken to reimburse her workers'
26 compensation benefits paid by the Department of Labor and Industries. Id. at 7. Workers'
27 compensation benefits are administered by the Department of Labor and Industries under RCW
28

ORDER GRANTING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT - 5

Title 51. In the present case, the $250,000 settlement from the third-party did not constitute workers' compensation administered by the Department, as evidenced by the parties' declarations including the "Third Party Recovery Worksheet," Dkt. # 13 at 4, and the Order and Notice issued by the Department of Labor and Industries describing the $250,000 total recovery from the third party. Dkt. # 9-2 at 1.

Huebner contends that her ability to be compensated for her damages was largely eliminated because the Department of Labor and Industries recovered the balance of the $250,000 settlement as provided for by statute after the allocation of Huebner's 25% and her attorney's fees. RCW 51.24.060(1)(b)–(c). Huebner does not cite to any authority in support of her argument that because a portion of the recovery was distributed to the Department as required under RCW 51.24.060, Huebner did not settle her claim for $250,000. Similarly, Huebner has not cited any authority to support the position that the statutory distribution of the award creates an exception to the rule that a UIM carrier is entitled to an offset for the full amount of the settlement that an injured party makes with a tortfeasor.

Huebner has not adequately distinguished her case from the general principle that UIM carriers are entitled to an offset for the tortfeasor's liability coverage. See e.g., Hamm., 151 Wn.2d at 308. Huebner relies on Allstate v. Welch, 45 Wn. App. 740 (1986), and Britton, 104 Wn.2d 518, to argue that UIM benefits may not be reduced by the amount of workers' compensation or disability benefits received by the UIM insured. Dkt. # 11 at 6–8. In those cases, the UIM insurers sought to offset the workers' compensation and disability benefits directly. Welch, 45 Wn. App. at 741; Britton, 104 Wn.2d at 531. Welch and Britton are inapplicable to the present case because Connect does not seek to offset the amount of workers' compensation or disability benefits received by Huebner, but rather the settlement payment made by the tortfeasor to Huebner. The settlement payment is not automatically converted into workers' compensation because a portion was paid to the Department to reimburse benefits paid pursuant to RCW 51.24.060.

ORDER GRANTING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT - 6

### 2. The Insurance Contract Provides for the Offset

Huebner argues that there is no specific provision in the insurance policy allowing an offset for the amount received from the tortfeasor, and therefore Connect is not entitled to offset the tortfeasor's policy limits from her UIM benefit. Dkt. # 11 at 8. However, the Washington legislature has entitled Connect to an offset as a matter of law. RCW 48.22.040(3); DeVany, 134 Wn. App. at 207–08 (holding that the UIM carrier was entitled to an offset by law even though there was no specific offset provision in the policy). Even so, the plain language of the insurance contract provides that the UIM policy limit can be "reduced by all sums paid" when the insured "is legally entitled to recover" from other "legally liable" parties, as is the case here. Dkt. # 9-3 at 18.

### 3. The Collateral Source Rule Does Not Apply

Huebner argues that the evidence of the Department of Labor and Industries payments would be excluded at trial under both the general collateral source rule and a state Labor and Industries statute, RCW 51.24.100. Dkt. # 11 at 12. The collateral source rule and statutory arguments do not apply in the present case because the issue here is not whether the evidence of the Labor and Industries payments would be admissible at trial but whether Connect is entitled to an offset as a matter of law. Additionally, Huebner's argument that the evidence of workers' compensation payments would be inadmissible at trial is unconvincing because Huebner herself put those payments at issue. Johnson v. Weyerhaeuser Co., 134 Wn.2d 795, 804 (1998) ("Injured parties may . . . waive the protections of the collateral source rule by opening the door to evidence of collateral benefits."); see generally Dkt. # 13.

### IV. ATTORNEY'S FEES

Huebner argues she is entitled to reasonable attorney's fees incurred to receive the benefit of her policy. Dkt. # 11 at 15. In Olympic S.S., the Washington Supreme Court held that reasonable attorney's fees were required in any legal action in which "the insurer compels the insured to assume the burden of legal action, to obtain the full benefit of his insurance contract, regardless of whether the insurer's duty to defend is at issue." Olympic S.S. Co. v. Centennial

ORDER GRANTING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT - 7

Ins. Co., 117 Wn.2d 37, 53 (1991). An insured is only entitled to recover attorney fees if he prevails on one or more of the disputed insurance issues. Heringlake v. State Farm Fire & Cas. Co., Inc., 74 Wn. App. 179, 196 (1994) ("We think it is obvious that one is entitled to fees under Olympic [S.S.], only if the party seeking fees prevails on some claim."). Because of the Court's disposition, Huebner is not entitled to an award of attorney's fees.

## V.   CONCLUSION

For all of the foregoing reasons, IT IS HEREBY ORDERED THAT,

(1) Connect's Motion for Summary Judgment (Dkt. # 8) is GRANTED; and

(2) Huebner is not entitled to attorney's fees and costs.

DATED this 1st day of December, 2021.

*Robert S. Lasnik*
Robert S. Lasnik
United States District Judge

ORDER GRANTING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT - 8